**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**WILLIAM HOWARD ADKINS
and MARRIAN A. ADKINS,**
　　　　　**Plaintiff,**

**v.**　　　　　　　　　　　　　　　**Case No.:  3:13-cv-32123**

**CMH HOMES INC. d/b/a FREEDOM
HOMES; VANDERBILT MORTGAGE
AND FINANCE, INC.; and JOHN DOE
HOLDER,**

　　　　　**Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

　　　　Pending before the Court is Plaintiffs' Motion to Quash Subpoenas. (ECF No. 41).
Defendants have filed a response in opposition to the motion, (ECF No. 45), and
Plaintiffs have filed a reply in support of their motion to quash, or in the alternative, a
motion for protective order. (ECF No. 59). For the reasons that follow, the Court
**GRANTS** Plaintiffs' motion to quash the subpoena issued to Radiology, Inc., (ECF No.
41). However, in regard to the subpoenas seeking communications with debt collection
agencies, the Court **DENIES** Plaintiffs' motion to quash, and likewise **DENIES**
Plaintiffs' motion for a protective order. (ECF No. 59). Given that the parties have
resolved all other issues, the Court **DENIES** Plaintiffs' motion to quash the remaining
subpoenas, as moot.

**I.　　<u>Relevant Facts</u>**

　　　　In November 2013, Plaintiffs filed the instant action regarding the purchase,
financing, and warranty of a mobile home they bought from defendant CMH Homes in

2009. According to Plaintiffs, they were initially told they could purchase the home for $92,000, without making a down payment, at an interest rate of 2.9% over a 30-year repayment period, and the home would come with a one-year warranty. However, by the time the transaction was completed, Plaintiffs had paid $113,000 for the home, financed at an interest rate of 8.49%, and the home came without a warranty. They later learned that the total amount they had financed was $136,498.21, which included more than $11,000 in settlement charges, and a discount fee of $5,239.74 that they claim was never explained to them, and they did not request. Plaintiffs allege that Defendants took advantage of their limited education and financial unsophistication. They assert claims of unconscionable inducement; fraud as a contract defense; and joint venture. Plaintiffs seek actual, consequential, and incidental damages, civil penalties, attorneys' fees, and equitable relief.

In the course of discovery, Defendants served thirteen subpoenas *duces tecum* on banks, credit institutions, collection agencies, employers, and a health care provider with connections to Plaintiffs. Plaintiffs moved to quash the subpoenas, arguing that the subpoenas requested information that was irrelevant to the matters in dispute, and they were overly broad. After the motion to quash was filed, the parties conferred and have now reached an agreement with respect to all of the issues except for two.

First, Plaintiffs object to a subpoena served on Radiology Inc., which requests medical and billing records related to treatment rendered to Plaintiff Marrian Adkins. Plaintiffs contend that Ms. Adkins's health care records are irrelevant to the issues in dispute. Second, Plaintiffs object to the production of communications logs and notes from debt collection agencies documenting conversations with Plaintiffs, arguing that Defendants' subpoenas are overly broad in scope and are not reasonably calculated to

lead to the discovery of admissible evidence. Plaintiffs refute Defendants' claim that the communication logs are relevant to establish Plaintiffs' financial sophistication for purposes of determining procedural unconscionability in the instant action. In Plaintiffs' view, unrelated call logs simply do not shed light on procedural unconscionability, which would be determined by examining factors such as Plaintiffs' age, literacy, and sophistication, as well as the complexity of contract terms, the circumstances and setting surrounding the formation of the contract, and the adhesive nature of the contract at issue here. Moreover, Plaintiffs claim that Defendants' true purpose in pursuing the health care records and the communication logs is to harass and embarrass Plaintiffs.

## II.    <u>Discussion</u>

When a subpoena issues under Rule 45 for the purpose of discovery, "Rule 45 adopts the standard[s] codified in Rule 26." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). In other words, a subpoena used for discovery must comply with the scope and limits of discovery set forth in Rule 26, and may be quashed or modified for the same reasons that would support a protective order under Rule 26. *HDSherer LLC v. Natural Molecular Testing Corp,* 292 F.R.D. 305, 308 (D.S.C. 2013). In this context, a subpoena may be used to discover "any nonprivileged matter that is relevant to any party's claim or defense … if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). "The scope of relevancy under the discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner,* 272 F.R.D. 431, 433 (D.Md.). For purposes of discovery, information is relevant, and thus discoverable, if it '"bears on, or … reasonably could lead to other

3

matter[s] that could bear on, any issue that is or may be in the case. Although 'the pleadings are the starting point from which relevancy and discovery are determined ... [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.' Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes." *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted).

Simply because information is discoverable under Rule 26, however, "does not mean that discovery must be had." *Schaaf,* 233 F.R.D. at 453 (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004)). Discovery that seeks relevant information may nevertheless be restricted or prohibited pursuant to a Rule 26(c) motion when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Moreover, with or without a motion, the court may limit the frequency and extent of discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The protections conferred by Rule 26 are incorporated in Rule 45(d)(3), which sets forth additional grounds for quashing, modifying, or molding the terms of a subpoena. *HDSherer LLC,* 292 F.R.D. at 308 ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (citing *Cook v. Howard,* 484 Fed.Appx. 805, 812 (4th Cir. Aug. 24, 2012) ("Although Rule 45(c) sets forth additional grounds on which a

subpoena against a third party may be quashed[,] ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.")); *see also Firetrace USA, LLC v. Jesclard,* No. cv–07–2001, 2008 WL 5146691, at *2 (D.Ariz. Dec. 8, 2008) ("According to its 1991 Advisory Committee Notes, Rule 45 [(d)](3) 'tracks the provisions of Rule 26(c).' Fed. R. Civ. P. 45. In this way, Rules 45 and 26 are not mutually exclusive, but rather cover the same ground.")

Regardless of whether a motion is made under Rule 26(c) or Rule 45(d), the party opposing discovery has the obligation to submit evidence supporting its claims that the discovery is unduly burdensome, oppressive, or irrelevant. To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D.Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D. Fla.2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome").

In this case, Plaintiffs complain that Defendants have issued subpoenas that are

overly broad, and intrusive, and seek information that is not even remotely relevant to the issues in dispute. Therefore, the Court must consider Plaintiffs' motion under the standards set forth in Federal Rule of Civil Procedure 26 and may fashion a protective order quashing or modifying the subpoenas to the extent that they seek discovery which is irrelevant, overly broad, annoying, embarrassing, oppressive, unduly burdensome or expensive, unreasonably cumulative or duplicative. As the party resisting discovery, Plaintiffs bear the burden of persuasion.

## A.  *Subpoena to Radiology Inc.*

Defendants request medical records and bills from Radiology Inc. concerning care and treatment rendered to Marrian Adkins for the period of January 1, 2005 through the present. Defendants argue that these records are relevant for two reasons. First, Plaintiffs have alleged "annoyance, inconvenience, and fear of losing their home" as a result of Defendants' acts. In Defendants' view, since Plaintiffs have placed their mental state at issue, Defendants are entitled to Ms. Adkins's medical records. Defendants claim that Plaintiffs' medical bills are equally relevant to the issue of emotional distress, as the bills from Radiology Inc. were sent to a collection agency; thus, they potentially contributed to Ms. Adkins's alleged emotional distress.

Second, Defendants state that Plaintiffs' counsel recently disclosed that Ms. Adkins is in the early stages of dementia or Alzheimer's. In light of this disclosure, Defendants require Ms. Adkins's medical records to discover her past and present competency; her ability to pursue the pending civil action; and the effect her medication may have on her alleged claims of emotional distress.

In response, Plaintiffs argue that they are not making a claim of emotional distress. They deny that they have placed their medical or psychological condition at

issue and assert that Defendants are merely attempting to harass Ms. Adkins by invading her privacy. Similarly, the medical bills show nothing more probative than that the Adkinses had other bills at the time they purchased the mobile home. In addition, Plaintiffs state that Defendants' argument regarding Ms. Adkins's early dementia is a red herring. Plaintiffs provided Defendants with a recent note from Ms. Adkins's primary care physician confirming that Ms. Adkins's is currently competent. Nonetheless, Ms. Adkins has signed a Power of Attorney to be used in the event that her condition deteriorates in the future and affects her ability to prosecute this civil action. Accordingly, her records from Radiology Inc. are not relevant as they have no bearing on the state of her competence in 2009, or on the future prosecution or outcome of this case.

The undersigned agrees that Defendants would be entitled to discover Ms. Adkins's psychological records if she had placed her mental state at issue in this action. *See Carpenter v. Res-Care Health Services, Inc.,* Case No. 3:12-cv-08047, 2013 WL 1750464, at *2 (S.D.W.Va. Apr. 23, 2013). However, she has not done so. Defendants base their contention that Ms. Adkins's psychological state is at issue on a single allegation in the complaint, which states: "As a result of Defendants' acts, Plaintiffs have suffered annoyance, inconvenience, and fear of loss of home." Yet this allegation does not rise to the level of even a "garden variety" emotional distress claim, because Plaintiffs are not seeking damages for mental distress or anguish. Instead, they demand that the contract be declared unenforceable, and ask for civil penalties, actual damages, attorneys' fees, incidental and consequential damages, and equitable relief. To remove any lingering doubt, Plaintiffs confirm in their reply memorandum that they are not making a claim for emotional distress. Therefore, in the absence of a claim seeking

damages for emotional distress, Defendants are hard-pressed to demonstrate a genuine need for Ms. Adkins's medical records.

Similarly, Ms. Adkins's recent diagnosis simply does not provide a basis for Defendants' request to collect nine years of her radiology records. It appears that Plaintiffs have provided a current statement confirming Ms. Adkins's competency. Accordingly, the undersigned finds that the records from Radiology Inc. are not relevant to any issue in dispute. Consequently, Plaintiffs' motion to quash the subpoena to Radiology Inc. is granted.

### B.    Subpoenas for Communication Logs

Defendants served four collection agencies with subpoenas requesting, in relevant part, debt collection logs and other records reflecting communications with Plaintiffs. Defendants contend that these documents are relevant on the issue of Plaintiffs' alleged financial unsophistication, which is the "lynchpin" of their unconscionable inducement claim. (ECF No. 45 at 9). Plaintiffs originally moved to quash the subpoenas, but now request a protective order limiting the scope of the subpoenas on the ground that Defendants do not need to see the substance of every telephone call Plaintiffs had with a debt collector in order to establish their financial sophistication. Plaintiffs claim that Defendants want these "sensitive" records as a way to embarrass and harass Plaintiffs.

Plaintiffs' financial history, experience, knowledge, and record are plainly relevant to the issues in dispute in this civil action. As Defendants point out, when determining whether a contract is unconscionable under West Virginia law, "the particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in

8

others." *Arnold v. United Cos. Lending Corp.,* 511 S.E.2d 854. 860 (W.Va. 1998). An examination of the circumstances surrounding a contract necessarily involves an assessment of the parties to the contract, including their education, intelligence, business savvy, age, experience, and bargaining power. Certainly, the more information that can be gathered regarding the financial histories of the parties, the more robust the evaluation will be as to the unconscionability of the contract. In that context, Plaintiffs' communications prior to 2009 regarding any financial matter, including debt collection, arguably provide probative evidence on the issue of unconscionability. Therefore, Defendants are entitled to obtain communications logs for the time period before the parties entered into the contract at issue in this litigation.

For the period after 2009, Defendants claim that Plaintiffs' communications with debt collectors are relevant not only to the issue of Plaintiffs' financial sophistication, but also as to the defenses of laches and failure to mitigate damages. Plaintiffs offer no argument to rebut Defendants' position. Federal Rule of Civil Procedure 26(c) allows the court, for good cause, to issue an order forbidding or limiting discovery when necessary to protect a party from annoyance, embarrassment, or oppression. The burden to establish good cause is on the moving party, and must be made by setting forth specific and particular facts. Broad and conclusory statements of anticipated harm are insufficient to support a protective order. *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D.Md. 2006). Plaintiffs fail to offer any specific factual showing to support their assertion that the production of communication logs would be embarrassing, annoying, or harassing. Indeed, the factual representations from Plaintiffs are so lacking in detail that the undersigned is unable to tell whether Plaintiffs have actually made an effort to determine what logs, if any, exist and, if logs do exist, whether they truly

9

contain information that is sensitive or embarrassing. Accordingly, the undersigned finds that Plaintiffs have not carried their burden to demonstrate good cause for a protective order limiting or forbidding the debt collection communication records or logs.

Wherefore, for the reasons stated, the Court **GRANTS** Plaintiffs' motion to quash the subpoena issued to Radiology, Inc., (ECF No. 41), and **DENIES** Plaintiffs' motion to quash and motion for a protective order regarding the subpoenas seeking communications with debt collection companies, (ECF Nos. 41, 59). Given that the parties have resolved the issues pertaining to the other subpoenas, the court **DENIES** Plaintiffs' motion to quash the remaining subpoenas, as moot.

The Clerk is directed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** September 10, 2014

Cheryl A. Eifert
United States Magistrate Judge