IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLIAM HOWARD ADKINS and
MARRIAN A. ADKINS,

        Plaintiffs,

v.                                                                    Case No.:  3:13-cv-32123

CMH HOMES, INC. d/b/a FREEDOM
HOMES, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three motions related to Defendants' attempts to investigate an alleged diagnosis of early stage dementia suffered by Plaintiff, Marrian Adkins and the associated issue of her mental competency, including Plaintiffs' Motion to Quash Subpoenas, (ECF No. 70), Defendants' Joint Motion for Mental Examination of Marrian Adkins, (ECF No. 82), and Motion of Defendant Vanderbilt Mortgage and Finance, Inc. to Compel Answers to Interrogatories and Requests for Production of Documents. (ECF No. 91). For the reasons that follow, the Court **GRANTS** the motion to quash subpoenas, **DENIES** the motion for a mental examination, and **DENIES** the motion to compel. However, the Court **GRANTS** Defendants certain limited discovery into the issue of Plaintiff's diagnosis of dementia and her competency at the time she executed a Power of Attorney in favor of her husband.

1

I. **Relevant Facts**

In November 2013, Plaintiffs filed the instant action regarding the purchase, financing, and warranty of a mobile home they bought from defendant CMH Homes in 2009. According to Plaintiffs, they were initially told they could purchase the home for $92,000, without making a down payment, at an interest rate of 2.9% over a 30-year repayment period, and the home would come with a one-year warranty. However, by the time the transaction was completed, Plaintiffs had paid $113,000 for the home, financed at an interest rate of 8.49%, and the home came without a warranty. They later learned that the total amount they had financed was $136,498.21, which included more than $11,000 in settlement charges, and a discount fee of $5,239.74 that they claim was never explained to them, and they did not request. Plaintiffs allege that Defendants took advantage of their limited education and financial unsophistication. They assert claims of unconscionable inducement; fraud as a contract defense; and joint venture. Plaintiffs seek actual, consequential, and incidental damages, civil penalties, attorneys' fees, and equitable relief.

In the course of discovery, Plaintiffs advised Defendants that Marrian Adkins had been recently diagnosed with early stage dementia. Therefore, out of an abundance of caution, Ms. Adkins decided to prepare a Power of Attorney authorizing her husband to pursue her rights in the instant action should her condition worsen. (ECF No. 59-1). Subsequently, Defendants took the deposition of Ms. Adkins, during which she testified that she was in the first stages of dementia and suffered from long-term memory loss; however, she had not received any testing or treatment related to her condition. When asked questions regarding the 2009 transaction that

forms the basis of the complaint, Ms. Adkins was essentially unable to recall any details of her communications and contacts with Defendants' representatives. She remembered a few large events, like visiting the mobile home lot, selecting a home with an open floor plan, and watching the installation of the mobile home on her property, but she had no independent memory of any salient details regarding the financial transaction.

Based upon Ms. Adkins's "near-complete failure to recall the facts of the transaction at issue and concerns over Ms. Adkins's competency to proceed as a party litigant in her individual capacity in this civil action," (ECF No. 81 at 1), Defendants served subpoenas on two of Ms. Adkins's healthcare providers, St. Mary's Medical Center and Dr. Ronald Brownfield, seeking all records relating to treatment rendered to Ms. Adkins "for dementia or other conditions effecting [*sic*] memory, recollection, or cognition." (*See* ECF No. 70-1 at 1-10). In addition, Vanderbilt Mortgage and Finance, Inc. filed Interrogatories and Requests for Production of Documents seeking the names of all health care providers rendering diagnosis or treatment to Ms. Adkins for dementia or similar issues in the last ten years, and the names of all medications she is taking or was taking for those conditions, as well as the supporting documentation.

The parties met and conferred regarding the subpoenas, and when they could not agree, Plaintiffs filed the instant motion to quash. Plaintiffs contend that Defendants' continued efforts to obtain Ms. Adkins's medical records are not made in good faith. Instead, Defendants are trying to embarrass and oppress Ms. Adkins. Plaintiffs make similar objections to the discovery requests of Vanderbilt Mortgage and Finance, Inc., giving rise to the motion to compel. In a third approach aimed at

3

obtaining information about Marrian Adkins's dementia, Defendants have also moved the Court for an order under Federal Rule of Civil Procedure 35 compelling Ms. Adkins to submit to an independent medical examination by a neuropsychologist to determine her competency to execute a Power of Attorney, to litigate the instant action, and to testify at trial. (ECF No. 82 at 2). Not surprisingly, Plaintiffs oppose such an order, contending that Defendants' purpose in subjecting Ms. Adkins to an unnecessary psychological examination is to discourage her from pursuing the lawsuit. Plaintiffs argue that they submitted a statement from Ms. Adkins's family physician, Dr. Brownfield, verifying that she was competent at the time she executed the Power of Attorney. Accordingly, if Ms. Adkins becomes incompetent during the pendency of the action, Mr. Adkins is authorized to pursue and resolve the litigation on her behalf. For that reason, they dispute that Defendants have any valid reason to collect Ms. Adkins's records, ask questions regarding her health, or insist that she undergo an examination.

## II. Relevant Legal Principles

Federal Rule of Civil Procedure 45(d) sets forth the protections available to a person subject to or affected by a subpoena. In particular, Rule 45(d)(3) outlines when a court *must* quash or modify a subpoena, when it *may* do so, and when the court may direct compliance under specified conditions. As a general rule, "only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena." *Transcor, Inc. v. Furney Charters, Inc.,* 212 F.R.D. 588, 590 (D.Kan. 2003) (citation omitted). However, an exception exists when the person objecting has a personal right or privilege in the information sought by the requester. *Singletary v. Sterling Transport Company, Inc.,* 289 F.R.D. 237, 239

(E.D.Va. 2012). Although the subpoenas in this case are directed to St. Mary's Medical Center and Dr. Brownfield, the Court finds as a preliminary matter that Ms. Adkins has the requisite standing to move for their quashal. Clearly, Ms. Adkins has a personal right or privilege in the confidential information contained in her medical records, and thus a corresponding right to move to quash subpoenas *duces tecum* seeking those records.

When a subpoena issues under Rule 45 for the purpose of discovery, "Rule 45 adopts the standard[s] codified in Rule 26." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). In other words, a subpoena used for discovery must comply with the scope and limits of discovery set forth in Rule 26, and may be quashed or modified for the same reasons that would support a protective order under Rule 26. *HDSherer LLC v. Natural Molecular Testing Corp,* 292 F.R.D. 305, 308 (D.S.C. 2013). In this context, a subpoena may be used to discover "any nonprivileged matter that is relevant to any party's claim or defense ... if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). "The scope of relevancy under the discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner,* 272 F.R.D. 431, 433 (D.Md.). For purposes of discovery, information is relevant, and thus discoverable, if it '"bears on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Although 'the pleadings are the starting point from which relevancy and discovery are determined ... [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.' Rather, the general subject matter of the litigation governs the scope of

5

relevant information for discovery purposes." *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted).

Simply because information is discoverable under Rule 26, however, "does not mean that discovery must be had." *Schaaf,* 233 F.R.D. at 453 (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004)). Discovery that seeks relevant information may nevertheless be restricted or prohibited pursuant to a Rule 26(c) motion when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Moreover, with or without a motion, the court may limit the frequency and extent of discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The protections conferred by Rule 26 are incorporated in Rule 45(d)(3), which sets forth additional grounds for quashing, modifying, or molding the terms of a subpoena. *HDSherer LLC,* 292 F.R.D. at 308 ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (citing *Cook v. Howard,* 484 Fed.Appx. 805, 812 (4th Cir. Aug. 24, 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed[,] ... those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.")); *see also Firetrace USA, LLC v. Jesclard,* No. cv–07–2001, 2008 WL 5146691, at *2 (D.Ariz. Dec. 8, 2008) ("According to its 1991 Advisory Committee Notes, Rule 45 [(d)](3) 'tracks the provisions of Rule 26(c).'

6

Fed. R. Civ. P. 45. In this way, Rules 45 and 26 are not mutually exclusive, but rather cover the same ground.")

Here, Defendants seek medical records pertaining to Plaintiff Marrian Adkins. While medical records are not "privileged" under West Virginia law, and consequently are subject to discovery, the Supreme Court of Appeals of West Virginia has recognized that medical records are, by their very nature, highly confidential and entitled to special protection from unfettered release. *Keplinger v. Virginia Elec. and Power Co.,* 208 W.Va. 11, 23, 537 S.E.2d 632, 644 (2000). Therefore, even when a plaintiff's medical condition is placed at issue in a West Virginia action (i.e. is relevant), it does not automatically follow that the defendant is entitled to collect all of the plaintiff's medical records. Rather, the defendant is permitted only to obtain those records pertaining to the condition that has been placed at issue. *Id.* ("While we acknowledge that a person who has filed a civil action that places a medical condition at issue has impliedly consented to the release of medical information, this implied consent involves *only* medical information *related to the condition placed at issue.* In this regard, we stated in *Kitzmiller* that 'the absence of [a physician-patient] privilege contemplates the release of medical information *only* as it relates to the condition a plaintiff has placed at issue in a lawsuit; it does not efface the highly confidential nature of the physician-patient relationship that arises by express or implied contract'").

Similarly, the federal government, appreciating the need to regulate the release of electronically-stored and transmitted medical information, implemented the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Pub. L. 104-191. HIPAA applies to most health care providers, 45 C.F.R. §§ 160.102(a)(3),

7

160.103, and governs the use and disclosure of individually identifiable health information, also called "protected health information" *Id.* at § 160.103. Under HIPAA's Privacy Rule, health care providers may disclose protected health information for judicial proceedings as long as they meet certain requirements that reduce the risk of misuse, as well as unintended and unnecessary re-disclosures. 45 C.F.R. § 164.512(e)(1)(i)-(vi). Like the West Virginia Supreme Court, HIPAA promotes a standard of disclosing only the protected health information necessary to achieve the purpose underlying the disclosure.

Defendants additionally seek an order compelling Ms. Adkins to submit to an independent medical examination under Fed. R. Civ. P. 35. Rule 35 authorizes the court to order a party "whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." The order may only issue on good cause and adequate notice and "must specify the time, place, manner, condition, and scope of the examination, as well as the person or persons who will perform it." Fed.R.Civ.P. 35(a)(2). The law is well-settled that the "in controversy" and "good cause" requirements of the Rule are not mere formalities; rather, they must be met with "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

### III. Discussion

Defendants argue that they should be permitted to obtain Ms. Adkins's medical records and compel her to undergo a psychological examination because her

8

mental competency "has become a central issue in the continued prosecution of this litigation." (ECF No. 81 at 3). In support of their position, Defendants rely on three points. First, Ms. Adkins claims to have a diagnosis of early stage dementia. Second, at her deposition, Ms. Adkins could not recall any details of the 2009 financial transaction that forms the basis of her complaint against Defendants. Third, even though Ms. Adkins previously signed a Power of Attorney that allows her husband to prosecute this litigation on her behalf, Defendants are not persuaded by the hearsay statement of Ms. Adkins's physician that she was competent to sign the Power of Attorney.

Having reviewed Ms. Adkins's deposition testimony, the undersigned disagrees with Defendants that Ms. Adkins has placed her mental competency at issue, such that Defendants are entitled to subpoena her medical records, or obtain detailed discovery regarding her medical treatment. Moreover, the undersigned finds no good cause basis to order Ms. Adkins to submit to a psychological examination.

Ms. Adkins testified that she was told by an Emergency Room physician that she had "the beginnings of dementia." (ECF No. 81-1 at 2). She reported this to her family physician, Dr. Ronald Brownfield, but he did not test or treat her for dementia. According to Ms. Adkins, Dr. Brownfield wants to focus on some of her other medical conditions first, like spinal stenosis, a back condition for which she is scheduled to have surgery. (*Id.* at 2-3). Nevertheless, in light of the diagnosis of early stage dementia, Ms. Adkins requested that Dr. Brownfield confirm in writing that she was competent to select a Power of Attorney and Medical Power of Attorney, and she had both documents prepared so that her husband would be able to make decisions for her if necessary. (*Id.*) This testimony does not suggest any medical basis to question

9

Ms. Adkins's competency. If Ms. Adkins's dementia had progressed to a stage severe enough to affect her capacity to appreciate her surroundings, understand what is being said to her, and make informed decisions, her family physician would have undertaken to test and treat her. He certainly would not have written a note saying she was competent to make important choices affecting her future financial and health care decisions.

When asked if she was having trouble remembering things, Ms. Adkins testified that she did have some trouble with her long-term memory, but not with her short-term memory. (*Id.* at 4)*.* Ms. Adkins answered the rest of the questions posed to her at the deposition. She had very little memory of the conversations and paperwork related to the financial transaction at issue in this litigation, but recalled other events and information from the past; such as, the name of her high school; that a hurricane destroyed the mobile home she lived in with her first husband; the number of years, months, and days she was married to her first husband; what she did with land she inherited in Elliott County, Kentucky; that she and Mr. Adkins were looking at mobile homes in 2009 because their home was too small and was deteriorating; that she immediately liked the open floor plan of the home they selected; and that the financing rate was 2.9 percent. (*Id.* at 5-7). She also remembered the more pleasant aspects of the transaction involving the Defendants. She testified about seeing the mobile home on the lot, and being happy when she saw the home coming down the street to be delivered. She spoke about how nice the workers were that installed the mobile home on her property and how well they laid the carpet in the hallway. Ms. Adkins also recalled an early problem with the kitchen faucet in the home. (*Id.* at 14-15). She recognized her signature on the loan papers

10

and admitted that she had signed them. Ms. Adkins remembered being at the closing, and the attorneys hurrying to finish the paperwork, although she did not recall much about the paperwork itself. (ECF No. 81-1 at 10-11, 14, 15).

Although Ms. Adkins was unable to provide details about the business aspects of a mobile home purchase that occurred more than five years earlier, nothing about her testimony raises a "substantial concern with regard to [her] mental ability to rationally comprehend and accept matters relating to the present litigation." *State ex. rel. McMahon v. Hamilton,* 482 S.E.2d 192, 199 (W.Va. 1996). She clearly understood the purpose for executing a Power of Attorney and the essence of her claims against the Defendants. (ECF No. 81-1 at 3, 12). While Ms. Adkins's memory of the financial transaction may be impaired due to early stage dementia, it is equally as plausible that her poor memory simply reflects a lack of interest or understanding in the financial details at the time of the transaction.

Defendants also contend that the validity of the Power of Attorney is at issue given that Ms. Adkins's competency at the time she signed it is unsubstantiated. They complain that the statement supplied by Dr. Brownfield confirming Ms. Adkins's competency is unauthenticated and inadmissible hearsay that cannot be relied upon in court. (ECF No. 59-1 at 1). The statement is written on a prescription pad; the signature is essentially illegible; and neither the statement nor the signature is verified. In addition, Defendants have not been provided with any factual basis to support Dr. Brownfield's conclusion that Ms. Adkins was competent. Given that Ms. Adkins's competency is essential to the validity of the Power of Attorney, and the Power of Attorney may be crucial to a resolution of this litigation, Defendants argue that they are entitled to have Ms. Adkins tested to confirm that she is and was

11

competent to appoint her husband as her Power of Attorney in this case.

Considering that the issue of competency has arisen due to Ms. Adkins's representation that she has early stage dementia, and Defendants have some interest in confirming that the Power of Attorney is valid, the Court **GRANTS** Defendants leave to conduct limited discovery on the issue as follows:

1. Within **thirty (30) days** of the date of this Order, Plaintiffs are **ORDERED** to provide Defendants with a copy of Ms. Adkins's medical records, if any, from the Emergency Department of St. Mary's Medical Center and Dr. Ronald Brownfield, which reflect the diagnosis, testing or treatment of dementia or a similar disorder of the brain affecting memory. Defendants are prohibited from using or disclosing the medical records other than in connection with the instant litigation; and

2. Defendants are granted leave to take Dr. Brownfield's deposition on the issue of Ms. Adkins's competency at the time she executed the Power of Attorney. The parties shall agree on a mutually convenient date and time for this deposition and shall complete it prior to the deadline for Rule 26(a)(3) disclosures.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** December 9, 2014

Cheryl A. Eifert
United States Magistrate Judge