## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

**WILLIAM HOWARD ADKINS and**    )
**MARRIAN A. ADKINS,**    )
    )
   Plaintiffs,    )
    )
**v.**    )
    )    **Civil Action No.: 3:13-cv-32123**
**CMH HOMES, INC. d/b/a FREEDOM**    )
**HOMES, VANDERBILT**    )
**MORTGAGE AND FINANCE, INC.,**    )
**AND JOHN DOE HOLDER**    )
    )
   Defendants.    )

## DEFENDANT CMH HOMES, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant CMH Homes, Inc. ("CMH") respectfully submits this reply brief ("Reply") to Plaintiffs William Howard Adkins and Marrian A. Adkins's (individually, "Mr. Adkins" and "Ms. Adkins," collectively "Plaintiffs") Combined Response in Opposition to Defendants' Motions for Summary Judgment ("Opposition") (ECF 115) and in further support of CMH's Motion for Summary Judgment (ECF 98). More than four years after the closing, and only after Plaintiffs defaulted, Plaintiffs filed this lawsuit to avoid the Loan Agreement based upon unsupported allegations of improprieties preceding the closing that somehow rendered the contract unconscionable. The undisputed facts demonstrate, however, that Plaintiffs voluntarily entered into the agreement and were aware of the terms of the loan when they did so. The only proper summary judgment evidence further establishes that the loan terms they received were

substantively fair. Accordingly, CMH respectfully submits that its Motion should be granted and states further in reply as follows:

I.   **Plaintiffs' claim for unconscionable inducement still fails because Plaintiffs have not made any showing of substantive unconscionability.**

   A. **West Virginia law is clear that an unconscionability claim requires proof of both substantive and procedural unconscionability.**

Relying upon *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640 (W.Va. 2012), Plaintiffs contend that West Virginia statutory law provides that a contract "may be unconscionable in its terms <u>or</u> induced by unconscionable conduct."[1][2] Specifically, Plaintiffs contend that the Supreme Court of Appeals in *Quicken Loans* recognized "unconscionable inducement as a separate cause of action pursuant to section 46A-2-121."[3] Plaintiffs' interpretation of *Quicken Loans* is unfaithful to its holding and the Supreme Court's recitation of the law. In analyzing the unconscionability claim, the Supreme Court noted that "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, **and** the existence of unfair terms in the contract." *Quicken Loans*, 737 S.E.2d at 657 (emphasis added and internal quotation marks omitted). While the Supreme Court began its analysis with "unconscionability in the inducement," it was within the context of the overall unconscionability analysis, which included an analysis regarding the substantive components of the transaction. *Id.* at 657-658. At no point did the Supreme Court

---

[1] It is unclear from their response whether Plaintiffs intend to pursue either a statutory claim for unconscionability, a common law claim, or both. (Opposition, 8, 13). (ECF 115).  Nonetheless, it is undisputed that West Virginia common law requires evidence of both substantive and procedural unconscionability. *See Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W.Va. 2012). Plaintiffs Opposition admits as much. (*Id.*). Therefore, this Reply will address Plaintiffs' unconscionability claim under both the WVCCPA and the common law together.
[2] Opposition, 8. (ECF 115).
[3] *Id.*, at 9.

indicate that a finding of procedural unconscionability alone would have been sufficient to establish a claim for unconscionability or that unconscionability in the inducement was a separate cause of action as Plaintiffs incorrectly argue. The fact that the Supreme Court unequivocally found that the lender acted fraudulently in inducing the plaintiff into entering into the loan and yet went on to consider the substantive aspects of the transaction undermines Plaintiffs' interpretation of *Quicken Loans*, as according to Plaintiffs' interpretation, the Supreme Court need not have considered substantive unconscionability once it found the procedural component satisfied.

Plaintiffs also cite Justice Ketchum's concurring opinion in *Credit Acceptance Corp v. Front*, 745 S.E.2d 556 (W.Va. 2013) in support of their argument that a statutory unconscionability claim need only include procedural unconscionability. But closer review of Justice Ketchum's opinion undermines Plaintiffs' argument. While Justice Ketchum indicated that he believes the Supreme Court should revisit the point, he notes that recent case law establishes that "'[t]o be unenforceable, a contract term—must at least in some small measure—be both procedurally and substantively unconscionable.'" *Id.* at 571 (quoting *Dan Ryan Builders Inc. v. Nelson*, 737 S.E.2d 550, 558 (W.Va. 2012)). Furthermore, the majority opinion in *Credit Acceptance* specifically notes that pursuant to *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 221 (W.Va. 2012) ("*Brown II*") "'[a] contract term is unenforceable if it is **both** procedurally and substantively unconscionable.'" *Id.* at 564 (emphasis added). Thus, while *Credit Acceptance* suggests that at least one Supreme Court justice questions the efficacy of *Brown II*, the opinion acknowledges that West Virginia law requires both procedural and substantive unconscionability.[4]

---

[4] Plaintiffs also cite an opinion out of the Northern District of West Virginia in which the court denied a lenders motion for judgment on the pleadings on an unconscionability claim. *Diloreti v. Countrywide Home Loans, Inc. et al.*,

*See Fluharty v. Quicken Loans, Inc.*, 2014 WL 646414, at *4 (N.D.W.Va. Feb. 19, 2014) (providing a similar analysis of *Credit Acceptance*). As this Court has correctly held on numerous occasions, a party claiming a contract is unconscionable under West Virginia law must demonstrate both procedural and substantive unconscionability. *Petty v. Countrywide Home Loans, Inc.*, 2013 WL 1837932, at *4 (S.D. W. Va. May 1, 2013) (holding both procedural <u>and</u> substantive unconscionability necessary for statutory unconscionability claim in a case with only a statutory unconscionability claim).[5] Furthermore, any rule that provides that a plaintiff could avoid the impact of a completely fair and reasonable contract simply because there is some alleged, procedural impropriety defies logic. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) ("**A litigant who complains that he was forced to enter into a fair agreement will find no relief on grounds of unconscionability**.") (emphasis added). Taking Plaintiffs' logic to its natural conclusion, purportedly unsophisticated borrowers across West Virginia could unwind lending contracts that were completely favorable to the borrower simply because of alleged inequality in bargaining power between the parties or alleged improprieties during the contract formation process. It also contradicts the legislature's purpose in enacting the WVCCPA. *See Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854, 860 (W.Va. 1998) ("The legislature in enacting the [WVCCPA] in 1974, sought to eliminate the practice of including

---

No. 5:14-cv-00076. (ECF 115-4). The court in *Diloretti* relied upon *Quicken Loans* for the proposition that a plaintiff need only demonstrate procedural unconscionability. As noted above, however, the Supreme Court's opinion did not hold that a finding of procedural unconscionability alone would have been sufficient to establish a claim for unconscionability. In fact, the Court's opinion suggests the opposite.

[5] *See Beattie v. Skyline Corp.*, 906 F. Supp. 2d 528, 535-36 (S.D. W. Va. 2012); *Carroll v. JPMorgan Chase Bank, N.A.*, 2013 WL 173728, at *3 (S.D. W. Va. Jan. 16, 2013); *Fetty v. Wilmington Finance, Inc.*, 2010 WL 4342075, at *2 (S.D. W. Va. Oct. 26, 2010); *Beattie v. Skyline Corp.*, 2014 WL 7335148, at *6 (S.D.W.Va. Dec. 19, 2014).

**unconscionable terms** in consumer agreements covered by the Act.") (emphasis added and internal quotation marks omitted).

### B. Plaintiffs have offered no summary judgment evidence of substantive unconscionability.

As noted above, an unconscionability claim requires both procedural and substantive unconscionability, yet Plaintiffs have offered no evidence regarding substantive unconscionability. "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. . . Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Brown II* at 221.

Plaintiffs offer no testimony—expert or otherwise—regarding the commercial reasonableness of the terms of the transaction, or their purpose and effect, or the allocation of contractual risk, or public policy. In fact, Plaintiffs do not even allege that any specific term in the agreement is unreasonable in any respect. Plaintiffs also cite no case law in which a court held that a transaction with similar terms was held to be unconscionable. Rather, Plaintiffs' only "evidence" of substantive unconscionability consists of unsupported, self-serving allegations that the interest rate they received was higher than the interest rate verbally promised by CMH, allegedly undisclosed buydown points, and a brand new assertion that either CMH or Vanderbilt Mortgage and Finance, Inc. ("VMF") somehow failed to comply with federal disclosure laws.[6] Plaintiffs do not contend that the interest rate they received— 8.49%—was unreasonable under

---

[6] Opposition, 12, 15. (ECF 115).

the circumstances. Rather, Plaintiffs' allegations concern alleged representations leading up to the contract formation—purely a matter of procedural unconscionability. *See Brown II*, at 227 ("Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and <u>formation of the contract</u>.") Plaintiffs are attempting to pass off an allegation of procedural unconscionability as substantive unconscionability. Even if the alleged verbal representation regarding the interest rate occurred as Plaintiffs suggest—which it did not— that fact does not somehow make the transaction substantively unconscionable.

As for Plaintiffs' allegations regarding buydown points, Plaintiffs do not allege that buydown points standing alone are unreasonable or that West Virginia law prohibits a contract from containing buydown points. Plaintiffs only argument regarding the buydown points concerns an alleged failure by either CMH or VMF to disclose them. Plaintiffs' argument is contradicted by the record, as it is undisputed that Plaintiffs executed a Discount or Buydown Points Disclosure statement ("Discount Point Disclosure") whereby Plaintiffs purchased a 1% per annum interest rate buydown for $5,239.74.[7] The Discount Point Disclosure specifically notes that the buydown points "**[were] not required by Seller or Vanderbilt**, but have been requested by Buyer."[8] As a result, Plaintiffs cannot rely upon the buydown points as a basis for their unconscionability claim. *Heavener v. Quicken Loans, Inc.*, 2013 WL 5966423 at *6 (N.D.W.Va. Nov. 8, 2013) (noting that finance charges were fair because they were permitted by West Virginia law and the finance charge was disclosed). But in any event, even if there had been some issue with disclosure of

---

[7] A copy of the Discount Point Disclosure was attached as Ex. 2 to the Affidavit of K.Greer, attached as Ex. A to VMF's Motion for Summary Judgment. (Doc 100-1).
[8] *Id.*

buydown points, this would be purely an issue of procedural unconscionability, i.e., a purported failure to disclose contract terms that are otherwise reasonable and fair.

Plaintiffs also contend for the first time in this litigation that the transaction at issue was substantively unconscionable because CMH and VMF failed to comply with a number of federal disclosure laws.[9] Plaintiffs have no support whatsoever for the assertion that a violation of a federal disclosure law somehow renders an otherwise reasonable contract substantively unconscionable, nor could they, because any disclosure failure would be an issue stemming from the process of contract formation, and therefore purely procedural. Moreover, Plaintiffs' attempt to insert what amounts to a new cause of action through argument in a brief opposing summary judgment is precluded by the Rules and entirely inappropriate.[10]

In support of their assertion that CMH somehow violated federal disclosure law, Plaintiffs offer the declaration of "consulting expert" (lawyer) Nina Simon, which Plaintiffs contend is "meant solely to rebut the affidavit of Jason Koontz."[11] But Plaintiffs' declaration is not proper summary judgment evidence and is suspect in as much as Plaintiffs have impermissibly attempted to supplement their 20 page Opposition with an additional eleven page, single spaced legal argument masquerading as the opinion of a rebuttal "consulting expert." At no point prior to filing its Opposition did Plaintiffs disclose Ms. Simon as an expert or provide an expert report for Ms. Simon.[12] The deadline for disclosing Ms. Simon as an expert expired on November 3, 2014.[13]

---

[9] Opposition, 15. (ECF 115).

[10] *See Barclay White Skanska, Inc. v. Battelle Memorial Institute*, 262 Fed.Appx. 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

[11] Opposition, 15. (ECF 115).

[12] Plaintiffs also did not disclose Ms. Simon in response to interrogatories from CMH requesting the identity of every person Plaintiffs expect to call as a witness or expert witness at the trial of the case. Her testimony is therefore

Plaintiffs have not even attempted to assert a reason for their failure to properly disclose Ms. Simon. It also cannot be argued that Plaintiffs' failure is harmless, as CMH has not had an opportunity to depose Ms. Simon and the discovery and dispositive motion deadlines have already passed. [14]

Plaintiffs and their improperly disclosed "consulting expert"[15] Nina Simon argue that CMH, not VMF, was the lender in this transaction and, as such, CMH failed to meet various state and federal disclosure requirements to which lenders are subject and, in turn, left Plaintiffs hopelessly confused about the identity of the lender and the terms of the deal.[16] However, as discussed below, the loan documents and **Plaintiffs' own testimony** clearly reflect that there was no confusion as to the party lending money to Plaintiffs to purchase the home.

---

inadmissible in response to a motion for summary judgment for this reason as well. *See Hartford Cas. Ins. Co. v. MCJ Clothiers, Inc.*, 54 Fed.Appx. 384, 388 (4th Cir. 2002) ("Under Rule 37, where parties do not disclose, in response to interrogatory requests, opinions to which witnesses will testify, the undisclosed testimony is inadmissible.").

[13] *See* Scheduling Order. (ECF 46). Under Rule 37(c)(1), a party who fails to identify an expert witness as required by Rule 26 "is not allowed to use that information or witness **to supply evidence on a motion**, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).

[14] Even if Ms. Simon had been properly disclosed, her declaration would still be inadmissible because her declaration attempts to pass off legal conclusions regarding CMH's and VMF's compliance with federal laws as expert testimony. For instance, Ms. Simon's declaration contends that "[t]he conflicting transaction documents reveal significant noncompliance with federal laws . . . ." As the Fourth Circuit has made clear, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to facts is generally inadmissible." *U.S. v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *see, e.g., Tyree v. Boston Scientific Corp.*, 2014 WL 5486694, at *5 (S.D.W.Va. Oct. 29, 2014) ("[A]sserting a violation of the FDCA is a legal conclusion, not an expert opinion.").

[15] Plaintiffs' claim that Ms. Simon is a "consulting expert" seeks to impermissibly circumvent the Federal Rules of Civil Procedure and this Court's Scheduling Order. *See* Black's Law Dictionary (9th ed. 2009) (Defining a consulting expert as "[a]n expert who, though retained by a party, is not expected to be called as a witness at trial."). Any suggestion by Plaintiffs that Ms. Simon will not be testifying at trial and therefore need not have been disclosed, is incorrect. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence…."). Because Plaintiffs deliberately ignored this Court's expert disclosure deadlines, Ms. Simon's declaration or opinions would not be admissible at the trial of this case. As a result, her opinions, which are in any event grossly flawed, cannot be considered in ruling on this motion for summary judgment.

[16] Opposition, 15 and Ex. 5. (ECF 115-5).

It was to VMF that the Adkinses submitted their application for credit. *See* Application to Vanderbilt Mortgage and Finance, Inc.[17] Indeed, Mr. Adkins testified that he fully understood that, when he submitted the application, he was seeking credit from VMF, not CMH:

> Q. When you talked to Mr. Frye about submitting an application, was there a discussion about to whom you'd be submitting the application?
> A. Vanderbilt.
> Q. Okay. So you understood that?
> A. Yes, sir.
> Q. Okay. Did you request that an application be submitted to anyone else?
> A. No, sir.[18]

Clearly, Mr. Adkins was not confused about the party lending him funds to finance the purchase of his new manufactured home.

Furthermore, while the Note identifies CMH as the Seller and grants CMH a security interest, the language of the Note plainly states that the contract was assigned to VMF.[19] This clearly evidences that, immediately upon execution, the debt was payable to VMF —not CMH. Additionally, the loan disclosures, including the Loan Application, the Good Faith Estimate, the Deed of Trust, the HUD-1 Settlement Statement, and the Notice of Right of Rescission, all identify VMF as the lender. More importantly, Plaintiffs' purported confusion—over four years after the transaction and despite his own testimony to the contrary, the terms of the loan documents, and the circumstances of the loan closing discussed below—simply has no bearing on whether or not any particular term of the contract that the Plaintiffs actually signed was substantively unconscionable.

---

[17] Ex. 1 to the Affidavit of R.Ball, which was attached as Ex. B to CMH's Motion. (ECF 98-2).
[18] W. Adkins Depo. at 179-80. (ECF 115-1).
[19] Note. (ECF 100-4).

While Plaintiffs—the party with the burden of proof on this issue—have offered no evidence whatsoever of substantive unconscionability, CMH offered the affidavit of expert Jason Koontz in which he testified that "the loan terms and conditions received by Plaintiffs in their loan . . . were reasonable and conformed with other manufactured housing loan terms offered in the market during the applicable time frame."[20] Plaintiffs have offered no admissible contrary evidence or filed a motion to disqualify Mr. Koontz as an expert; Plaintiffs have therefore waived their right to challenge Mr. Koontz and his opinions. Rather, Plaintiffs argue that Mr. Koontz's observations lack evidentiary support. As set forth in Mr. Koontz's affidavit, however, his opinions were based upon his 20 years of banking experience, including in the underwriting, approval, and loan closing process of manufactured homes."[21] Based upon that experience, Mr. Koontz testified that the Plaintiffs' 8.49% interest rate was a competitive rate for manufactured homes during the period of 01/01/2009 through 09/30/2009, the 30 year term was industry standard during that time period, and Plaintiffs' debt to income ratio was within industry guidelines.[22] [23]

The only properly supported summary judgment evidence demonstrates that the terms of the transaction were reasonable and fair to Plaintiffs. As a result, Plaintiffs' unconscionability claim fails for lack of substantive unconscionability and CMH's Motion for Summary Judgment on Plaintiffs' unconscionability claim is due to be granted.

---

[20] The affidavit of Jason D. Koontz was attached as Exhibit G to CMH's Motion for Summary Judgment. (ECF 98-7).
[21] *Id.*
[22] *Id.*
[23] Unlike the legal opinions of Ms. Simon, matters such as industry standards are proper for expert testimony. *See generally Bennett v. Kroger Co.*, 1998 WL 398823 (4th Cir. 1998); *Brisbon v. Corkill*, 151 Fed.Appx. 576, 579 (9th Cir. 2005) ("Given proper foundation, expert testimony concerning industry standards is perfectly admissible.").

## II. Plaintiffs' claim for unconscionable inducement also fails because Plaintiffs have failed to demonstrate procedural unconscionability.

As noted previously, procedural unconscionability involves a variety of inadequacies including "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Brown II* at 221. Plaintiffs' Opposition does not cite a single case in which a court held that a plaintiff had demonstrated procedural unconscionability under circumstances similar to those at hand. Rather, Plaintiffs' Opposition relies entirely upon Plaintiffs' creative mischaracterization of the summary judgment evidence in an effort to create an issue of fact. As noted below, however, the summary judgment evidence demonstrates as a matter of law that the bargaining process and formation of the Loan Agreement were not procedurally unconscionable.

### A. Plaintiffs are sufficiently educated and sophisticated.

Plaintiffs' response attempts to downplay their education and experience to spin a narrative that is not supported by the undisputed evidence. For instance, Plaintiffs note that "[n]either of the Plaintiffs received any education beyond high school or the GED level."[24] As noted previously, the court in *Kucharek v. Dan Ryan Builders, Inc.*, 2013 WL 3365249 (N.D.W.Va. Jul 3, 2013), despite claims of unconscionability, enforced an arbitration agreement against plaintiffs with identical education backgrounds. Plaintiffs also attempt to downplay Mr. Adkins' prior experience by contending that in both instances Plaintiff did not engage in any

---

[24] Opposition, 11. (ECF 115).

negotiations.[25] But, the undisputed facts establish that Mr. Adkins, in his capacity as administrator of his father's estate, made decisions regarding the sale of real property and attended a closing of the transaction.[26] The undisputed facts also establish that Plaintiffs previously negotiated a contract to finance the purchase of the real property at issue with the seller and attended a closing of the loan.[27] Mr. Adkins also testified under oath that he understood the interest rate for the loan, the amount of his monthly payments, the amount of the loan, the term of the loan, and the fact that Mr. Adkins was putting up the real property as collateral for the loan.[28] Plaintiffs' understanding of the basic terms of the transaction undermines Plaintiffs' unconscionability narrative and aligns with West Virginia case law holding that a plaintiff, like Plaintiffs here, was sufficiently sophisticated for purposes of procedural unconscionability. *Cf. Heavener v. Quicken Loans, Inc.*, 2013 WL 5966423, at *4 (N.D. W. Va. Nov. 8, 2013).

### B. Plaintiffs' offer no evidence that the contract at issue was adhesive in nature.

As noted in CMH's Motion for Summary Judgment, the undisputed evidence demonstrates that the Loan Agreement was negotiated as a matter of law and therefore it did not demonstrate the "take it or leave it" nature of a potentially invalid adhesion contract. *See Kucharek*, 2013 WL 3365249, at *9. Plaintiffs, however, contend that CMH's argument is inconsistent with the record because "[t]he sales and financing agreements were form contracts drafted by the Defendants."[29] As an initial matter, the fact that the Loan Agreement contained

---

[25] Opposition, 13. (ECF 115).
[26] W.Adkins Depo. 26:18-23, 28:8-21. (ECF 115-1).
[27] *Id.* at 81:8-12, 83:6-10, 84:2-8, 94:10-21. (ECF 115-1).
[28] *Id.* at 214:2-7; 215:3-13; 217:18-218:9; 218:22-219:5. (ECF 115-1).
[29] Opposition, 13-14. (ECF 115).

some form terms and was drafted by CMH or VMF does not equate to a contract of adhesion. *See, e.g.*, *Dan Ryan Builders, Inc. v. Nelson*, 2014 WL 496775, *11 (N.D.W.Va. Feb. 6, 2014) (finding that a pre-printed contract was not adhesive in nature because it contained fill-in-the-blank provisions and the contract indicated that it had been negotiated); *Kucharek*, 2013 WL 3365249, at *9 (same). Plaintiffs offer no evidence that the Loan Agreement was offered on a take it or leave it basis. In fact, the undisputed evidence establishes as a matter of law that some of the terms were negotiated. It is also undisputed that Plaintiffs requested and received add-on features to the Manufactured Home and financed those add-ons through the purchase of the Manufactured Home. And is undisputed that the Discount Point Disclosure, which Plaintiffs executed, states that the buydown points "**[were] not required by Seller or Vanderbilt**, but have been requested by Buyer."[30] Plaintiffs cannot now complain that the contract was adhesive simply because they chose to negotiate some terms but not others.

Plaintiffs also provide no evidence that there were no meaningful alternatives to signing the agreement. *Blevins v. Flagstar Bank, F.S.B.*, 2013 WL 3365252, at *9 (N.D.W.Va. Jul. 3, 2013). Plaintiffs have never claimed the absence of other manufactured home sellers or other lending sources, nor could they credibly do so. As a result, it cannot seriously be asserted that the contract at issue was adhesive in nature.

### C. The closing adequately provided Plaintiffs an opportunity to review and understand the terms of the contract.

Plaintiffs also contend that there is a dispute of fact regarding "the manner and setting of the closing and whether it afforded the Plaintiffs an opportunity consider and walk away from the

---

[30] Discount Point Disclosure. (ECF 100-1).

purchase."[31] In support of this assertion, Plaintiffs cite Mr. Adkins' deposition testimony that the closing was "so quick and so fast."[32] Plaintiffs, however, admit that the closing took approximately an hour to an hour and a half.[33] Mr. Adkins also testified as follows:

> Q. At any point did you ask to have a document explained to you during the closing?
> A. No, sir.
> Q. Okay. At any point did you try to ask a question and someone refused to answer your question?
> A. No, sir.
> Q. Okay. At any point did someone say to you that you could not review the documents?
> A. No, sir.[34]

This is unsurprising because the closing attorney, George Metz ("Metz"), testified he explained every document to Plaintiffs.[35] Furthermore, Metz testified that, while reviewing the closing documents with Plaintiffs, he allowed the Plaintiffs an opportunity to ask questions.[36] Metz also testified that he would have stopped the closing if he got the impression that Plaintiffs did not understand the documents.[37] There is simply no evidence that the loan closing did not afford the Plaintiffs every opportunity to understand and ask questions about the terms of the contract. As a result, Plaintiffs have not presented sufficient evidence of procedural unconscionability. *Heavener*, 2013 WL 5966423, at *5 ("[T]he loan closing's manner and setting provided [plaintiff] with a reasonable opportunity to understand the terms of the contract. . . . [Plaintiff] admitted that he had the opportunity to ask questions and time to read the documents prior to signing them.").

---

[31] Opposition, 14. (ECF 115).
[32] *Id.*
[33] W.Adkins Depo. 204:10. (ECF 115-1).
[34] *Id.* at 204:11-19.
[35] G.Metz Depo. 82:23-83:22. Excerpts of Metz's Depo. were attached as Ex. D to CMH's Motion. (ECF 98-4).
[36] *Id.* at 35:20-24.
[37] *Id.* at 24:14-25:13.

It is also undisputed that Plaintiffs were given the opportunity to walk away from the closing and the transaction. On this point, Plaintiffs' testified as follows:

> Q. Okay. But you understood at that time that you didn't have to sign this document, isn't that right?
> A. Correct.
> Q. Okay. So you could have gotten up from the table, walked away and said, "I don't want to enter into this agreement," correct?
> A. Correct.
> Q. Okay. But you chose to enter into it anyway, isn't that correct?
> A. Correct.[38]

At the closing, Plaintiffs also executed a three-day right of rescission ("Right of Rescission") that set forth Plaintiffs' right to cancel the Loan Transaction and void "the transaction, any lien, mortgage, or other security interest on [their] land arising from th[e] transaction."[39] Despite Mr. Adkins' testimony and the Right of Rescission that Plaintiffs executed, Plaintiffs now contend that they were not free to walk away from the closing because they were "locked into the consumer credit sale" before the closing.[40] Plaintiffs do not provide any document to substantiate this assertion. Plaintiffs only provide their unsupported, self-serving statement that they were "already signed in on it."[41] This does not even remotely approach the showing necessary to establish contract formation, or that if such a contract existed that it would comply with the statute of frauds. *Kerns v. Range Resources-Appalachia*, 2011 WL 197908, *3 (N.D.W.Va. Jan. 18, 2011) ("[C]ontract formation requires 'a complete meeting of the minds on all material matters, leaving nothing for future negotiations.") (quoting *Allen v. Simmons*, 125 S.E. 86, 88 (W.Va.

---

[38] W.Adkins Depo. 214:17-215:13. (ECF 115-1).
[39] W.Adkins Depo. 224:3-11; a copy of the Right of Rescission was attached as Exhibit 5 to the Affidavit of K.Greer, which was attached as Exhibit A to VMF's Motion for Summary Judgment. (ECF 100-1).
[40] Opposition, 11, 14. (ECF 115).
[41] Opposition, 4. (ECF 115).

1924)); W.Va. Code § 36-1-3;*Gibson v. Stalnaker*, 106 S.E. 243 (1921) ("The statute of frauds was founded in wisdom and sound policy. Its primary object was to prevent the setting up of pretend agreements, and then supporting them by perjury."). The law does not ascribe legal significance to a party's unsupported, alleged "belief" about contract formation, particularly when it contradicts the express terms of a written contract that Mr. Adkins freely admits he agreed to. Specifically, the Loan Agreement, which Plaintiffs signed at closing, expressly provided:

> **ENTIRE AGREEMENT**: This contract, any separate written warranty and the "Retailer Closing Agreement" constitute the entire agreement between Buyer and Seller. Buyer agrees that no representations, oral or written, have been made to the Buyer to induce the Buyer to enter into this contract, other than the representations expressly set forth in this contract and in any separate written warranty.[42]

Furthermore, Plaintiffs' alleged belief is contradicted by the express terms of the Right of Rescission and Mr. Adkins' own testimony that he could have walked away from the closing.[43] Simply put, Plaintiffs' attempt to create a factual dispute out of thin air regarding their ability to walk away from the closing must fail.[44]

### D. The terms of the agreement were plainly disclosed and were not unduly complex.

Plaintiffs do not dispute that they signed the relevant documents or that they were given an opportunity to review the documents and ask questions. *Brown v. CMH Mfg. Inc.*, 2014 WL 4298332, at *7 (S.D.W.Va. Aug. 29, 2014) ("The [plaintiffs] do not claim that, when signing the contract, anyone prohibited them from reading the terms of the contract. **The [plaintiffs] are thus**

---

[42] A copy of the Loan Agreement was attached as Exhibit 2 to the Affidavit of R.Ball, which was attached as Exhibit B to CMH's Motion for Summary Judgment. (ECF 98-2).
[43] W.Adkins Depo. 214:17-215:13. (ECF 115-1).
[44] *See also* § II.B.ii in VMF's Reply in support of its Motion for Summary Judgment.

**presumed to have read the terms of the contract and will be bound by them, even if they did not actually take the time to do so.**") (emphasis added). Nonetheless, Plaintiffs contend, without any support, that the loan terms were not plainly disclosed and were unduly complex.

However, Plaintiffs do not cite a single provision of the agreement that was not contained in the documents Plaintiffs executed; nor do Plaintiffs cite a single provision in the agreement that was not clearly drafted. Rather, Plaintiffs assert generally that the terms were unduly complex because Plaintiffs did not understand the buydown points provision. Assuming the assertion is even marginally credible, Plaintiffs were given an opportunity to ask questions regarding the terms of the agreement, but chose not to do so. As a result, Plaintiffs alleged lack of understanding of a single contract term cannot serve as the basis for a finding of unconscionability. *Dytko v. Chesapeake Appalachia, LLC*, 2014 WL 2440496, at *6 (N.D.W.Va. May 30, 2014) ("[W]hile the parties need to be provided a reasonable opportunity to understand the terms of the contract, there is no requirement that one party must explain the terms of the contract to the other.") (citing *Adkins v. Labor Ready, Inc.*, 185 F.Supp. 2d 628, 638 (S.D.W.Va. 2001)). It defies reason that a party could allegedly fail to understand a contract term and fail to ask a single question about the term, yet the other contracting party would bear all the risk of loss associated with the claimed misunderstanding.

The only remaining argument Plaintiffs offer in support of their unconscionability claim is the assertion that, presumably based on a conversation with CMH, they thought they had "agreed to purchase the home for approximately $92,000 at 2.9% interest with a monthly payment of less

than $900."[45] As an initial matter, Plaintiffs' have no documentary support whatsoever for this purported "agreement." To the contrary, the Loan Agreement's merger clause, which Plaintiffs signed, explicitly contradicts Plaintiffs' allegation: **"**Buyer agrees that **no representations, oral or written, have been made to the Buyer to induce the Buyer to enter into this contract**…."[46] More importantly, even assuming these representations occurred as Plaintiffs suggest—which CMH vehemently denies—they do not establish procedural unconscionability. Plaintiffs executed the Loan Agreement and other documents at the closing that set forth the terms of the agreement. In his deposition, Mr. Adkins admitted that he specifically remembered reviewing the interest rate, the purchase price, and the monthly payment amount.[47] Therefore, any assertion that they were not aware of the purchase price or the interest rate or their payment obligation at the time of the closing is contradicted by the record evidence. The undisputed evidence shows that Plaintiffs were fully aware of the final terms of the deal and the undisputed evidence shows that Plaintiffs knew that they could walk away from the closing. Yet, Plaintiffs decided to enter into the agreement, even though the terms they had reviewed conflicted with those they were purportedly given verbally by CMH. Considering all the circumstances, Plaintiffs adequately consented to the terms of the Loan Agreement, and the Loan Agreement is not procedurally unconscionable. *See Brown II*, 729 S.E.2d at 221. Therefore, this Court should grant the Motion for Summary Judgment on Plaintiffs' unconscionability count.

---

[45] Opposition, 14. (ECF 115).
[46] Loan Agreement (emphasis added). (ECF 98-2).
[47] W.Adkins Depo. 205:5-206:4, 214:2-7, 215:3-13. (ECF 115-1).

### III. Plaintiffs' "fraud as a contract defense" claim against CMH fails because CMH is not seeking to enforce the Loan Agreement.

Plaintiffs' Opposition makes clear that Plaintiffs are only seeking "equitable relief enjoining the enforcement of the contract."[48] Plaintiffs, however, do not even address CMH's argument that Plaintiffs' claim against CMH is inherently misplaced, as CMH is not seeking to enforce the Loan Agreement. As a result, any "fraud as a contract" defense fails and CMH is entitled to summary judgment. CMH also adopts and incorporates as if fully set-forth herein VMF's arguments in its Reply brief in further support of its Motion for Summary Judgment that Plaintiffs' "fraud as a contract defense" count fails.

### IV. Plaintiffs' joint venture claim fails because Plaintiffs have not established any underlying wrong.

CMH adopts and incorporates as if fully set-forth herein VMF's arguments in its Reply brief in further support of its Motion for Summary Judgment that Plaintiffs' "joint venture" count fails as a matter of law.

### CONCLUSION

For the reasons set forth above and in VMF's Reply in support of its Motion for Summary Judgment, all of Plaintiffs' claims fail as a matter of law. CMH requests that the Court therefore grant summary judgment in its favor.

**Respectfully submitted,**

**CMH HOMES, INC.**
**By counsel,**

/s/ Joseph M. Ward

Carrie Goodwin Fenwick (WV Bar #7164)

---

[48] Opposition, 18. (ECF 115).

Joseph M. Ward (WV Bar # 9733)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, West Virginia  25301

Edward S. Sledge, IV (*pro hac vice*)
J. Riley Key (*pro hac vice*)
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203

*Counsel for CMH Homes, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON DIVISION

|  |  |  |
|---|---|---|
| **WILLIAM HOWARD ADKINS and** | ) | |
| **MARRIAN A. ADKINS,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.: 3:13-cv-32123** |
| **CMH HOMES, INC. d/b/a FREEDOM** | ) | |
| **HOMES, VANDERBILT** | ) | |
| **MORTGAGE AND FINANCE, INC.,** | ) | |
| **AND JOHN DOE HOLDER** | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Joseph M. Ward, counsel for CMH Homes, Inc., do hereby certify that on the 22nd day of January, 2015, I served **Defendant CMH Homes, Inc.'s Reply Brief In Further Support of its Motion for Summary Judgment** upon counsel of record via one or more of the following methods: (1) electronic notification through the Court's CM/ECF system, and/or (2) depositing true copies in the United States Mail, postage prepaid, in envelopes addressed as follows:

Colten L. Fleu, Esq.
Mountain State Justice, Inc.
321 W. Main Street, Suite 401
Clarksburg, West Virginia  26301
*Counsel for Plaintiffs*

/s/ Joseph M. Ward
Joseph M. Ward (WV Bar # 9733)